J-S44017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DALE HODGES | |
| Appellant | No. 1746 WDA 2014 |

Appeal from the Judgments of Sentence entered September 29, 2014
In the Court of Common Pleas of Erie County
Criminal Division at Nos: CP-25-CR-0002482-2012
and CP-25-CR-0002490-2012

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 24, 2015**

Appellant Dale Hodges appeals from the judgments of sentence[1]

entered in the Court of Common Pleas of Erie County ("trial court"),

following his jury conviction for multiple sex crimes against two minors.

Upon review, we vacate and remand for resentencing.

On June 12, 2012, Erie Bureau of Police ("Erie Police") charged

Appellant with, *inter alia*, involuntary deviate sexual intercourse with a child

("IDSI"), aggravated indecent assault, indecent assault, corruption of

_____

[1] To the extent Appellant purports to appeal from the September 29, 2014
order denying his post-verdict motion, which we treat as a post-sentence
motion, we note that in a criminal context, an appeal properly lies from the
judgment of sentence, not an order denying post-sentence motions.
Accordingly, we have corrected the caption to reflect the September 29,
2014 judgments of sentence. **See Commonwealth v. Dreves**, 839 A.2d
1122, 1125 n.1 (Pa. Super. 2003) (*en banc*).

minors, and endangering the welfare of a child ("EWOC") at docket number 2482-2012 ("First Case").[2]  The affidavit of probable cause accompanying the complaint provided:

> On 4-12-12 M.R., juvenile victim (11-19-96), was interviewed at the Erie [County] [Children's Advocacy Center (CAC)] in regards to this incident.  The victim disclosed that she was sexually abused when she was 8 and 9 years of age by [Appellant].  The victim disclosed that these incidents happened while she would visit her grandma, [B.M.].  [Appellant] is [B.M.'s] boyfriend . . . [and] the incidents took place [at their residence.]  The victim disclosed that [Appellant] would come into her room at night and touch her vagina with his hand.  The victim disclosed that this happened more than one time during several different incidents.  The victim also disclosed that [Appellant] also licked her vagina with his tongue during some of these incidents.

Affidavit of Probable Cause, 6/12/12.

Thereafter, on July 2, 2012, Erie Police charged Appellant with the same crimes as in the First Case at docket 2490-2012 ("Second Case").  The affidavit of probable cause accompanying the Second Case provided:

> On 4-3-12 J.M., juvenile victim (5-27-97), was interviewed at the Erie Co. CAC in regards to this complaint.  The victim disclosed that she was sexually abused by [Appellant] when she was between the ages of 7 and 9.  The victim disclosed that these incidents happened while she would visit her grandma, [B.M.].  [Appellant] is [B.M.'s] boyfriend and they reside [together] where these incidents took place.  The victim disclosed that [Appellant] would touch her vagina with his fingers, lick her vagina with his tongue and made her touch his penis with her hand.  The victim disclosed that these types of incidents happened more than one time when she was between the age of 7 and 9.

Affidavit of Probable Cause, 7/2/12.

---

[2] 18 Pa.C.S.A. §§ 3123(b), 3125(b), 3126(a)(7), 6301(a)(1), and 4304(a).

The cases were consolidated for trial. Appellant's girlfriend, B.M., testified that she was accused of child abuse by the Office of Children and Youth. N.T. Trial, 5/19/14, at 138. B.M. further testified that the accusation against her was "unfounded" and, therefore, dismissed. *Id.* at 139. She testified that six months after the dismissal of the accusations, Appellant was accused with the instant crimes. *Id.* On cross-examination, B.M. clarified that the allegations against her were based only on physical abuse of children. *Id.* at 153.

Appellant testified that "there was a point in time when [B.M.] was accused, and when—as soon as that was gone over, it was three months later that I got accused." N.T. Trial, 5/20/14, at 43. On cross-examination, the Commonwealth asked Appellant whether B.M. was charged criminally for simple assault as a result of the child abuse allegations against her. *Id.* at 55. Appellant answered in the affirmative. *Id.*

To underscore the seriousness of the abuse allegations against B.M., the Commonwealth called Ryan Kightlinger, intake investigator at the Office of Children and Youth, to testify. *Id.* at 80-81. Kightlinger testified that B.M. was accused of abusing a six-year-old child in July 2010 and that he personally observed the injuries on the child. *Id.* at 81-82. Kightlinger also testified that B.M. was criminally charged and that the charges were eventually dismissed. *Id.* at 82.

Also, during the second day of trial, the court was informed that jurors had difficulty hearing M.R.'s testimony presented during the first day of trial.

*Id.* at 78. The jurors indicated to the trial court that, although they did not hear all of the testimony, they heard enough to render an impartial verdict. *Id.* at 78-79. The trial court resumed trial without objection by the parties. Following trial, the jury found Appellant guilty of all charged offenses.

On September 25, 2014, more than four months after trial, Appellant filed a "Post Verdict Motion: Motion for New Trial."[3] He argued that the trial court abused its discretion in failing to declare a mistrial given the jurors' inability to hear all of the evidence. Appellant also argued that he was entitled to a new trial based on after-discovered evidence demonstrating that B.M. was incapable of physically abusing children.

On September 29, 2014, the trial court conducted a hearing on the motion at which Appellant failed to present any evidence in support of the motion. Following the hearing, the trial court denied the motion. On the same date, the trial court also imposed an aggregate of 5 to 10 years' imprisonment in the First Case. Specifically, the trial court imposed a mandatory minimum sentence under 42 Pa.C.S.A. § 9718(a)(1) for IDSI. With respect to the Second Case, the trial court imposed an aggregate sentence of 10 to 20 years' imprisonment to run consecutively with the sentence imposed in the First Case. Specifically, the trial court imposed a

_____

[3] Although Appellant filed a post-verdict motion, we need not address whether it implicates our jurisdiction because the instant appeal lies from the judgment of sentence.

mandatory minimum sentence of 10 to 20 years in the Second Case under 42 Pa.C.S.A. § 9718(a)(1) for IDSI. In total, Appellant was ordered to serve 15 to 30 years' imprisonment.

Appellant timely appealed to this Court. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant raises two issues for our review. First, he argues that the trial court erred in failing to declare a mistrial because some members of the jury could not hear all of the trial testimony. Second, Appellant argues that the trial court erred in denying his motion for a new trial based on after-discovered evidence.

Appellant first argues that the trial court erred in failing to declare a mistrial because some jurors did not hear all of the testimony presented at trial. We explained in *Commonwealth v. Szakal*, 50 A.3d 210 (Pa. Super. 2012):

> [T]he decision to declare a mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.

*Id.* at 218 (citation and quotation marks omitted). It is settled that a defendant is entitled to a jury verdict arrived at by each jurors based upon the evidence introduced at trial. *See Commonwealth v. Greiner*, 455 A.2d 164, 166 (Pa. Super. 1983); *Commonwealth v. Brown*, 332 A.2d 828, 831-32 (Pa. Super. 1974). If, however, one or more of the jurors is

unable to hear and understand the evidence and testimony presented at trial, then the verdict must be set aside. ***Brown***, 332 A.2d at 831-32; ***Greiner***, 455 A.2d at 166-67.

We, however, need not address Appellant's first argument, because he has failed to preserve it for appeal. ***See*** Pa.R.A.P. 302(a). Under Pennsylvania Rule of Criminal Procedure 605, relating to mistrial, "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion ***shall*** be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B) (emphasis added); ***see also Szakal***, 50 A.3d at 219 (noting that the appellant's claim was waived because the appellant waited a substantial period before moving for mistrial); ***Brown***, 332 A.2d at 830 (noting the appellant timely moved for a mistrial); ***Greiner***, 455 A.2d at 166 (observing that the appellant filed a "timely motion for a mistrial").

Instantly, the trial transcript reveals that Appellant failed to object timely to the trial court's decision to resume trial. In fact, he waited a substantial period before expressing an objection[4] to the trial court's

---

[4] We are reticent to characterize as an objection Appellant's displeasure with the trial court's decision to resume the trial following the auditory concerns raised by the jury, because Appellant at no point actually moved for a mistrial. As the trial transcript reveals, Appellant indicated to the trial court only that he was going to seek a mistrial at some point in the future. ***See*** N.T. Trial, 5/20/14, at 96.

decision to resume the trial after it was informed by its tipstaff that the jurors were unable to hear the entire testimony presented on the first day of trial. The transcript reveals:

> (whereupon, discussion in chambers concluded at 10:28 a.m. and the trial reconvened in the courtroom at **10:37 a.m.**)
>
> [The trial court]: Ladies and gentlemen of the jury, it's been brought to my attention that there was concern by some members of the jury as the ability to hear some of the witnesses. And I know we have had some soft voices so far, but my question to you is have you been able to hear everything that has been testified to so far?
>
> (Whereupon, jurors respond negatively.)
>
> [The trial court]: Okay. No, you haven't?
>
> [Unidentified Juror]: No, several of them.
>
> [The trial court]: Okay. All right. What witnesses were those?
>
> [Unidentified Jurors]: The first young girl that testified, it was very difficult to hear her.
>
> [The trial court]: Okay. That was yesterday?
>
> [Unidentified Juror]: Yeah.
>
> [The trial court]: Okay, Well, it was difficult to hear, but could you hear?
>
> [Unidentified Juror]: I heard enough, but I don't know if everyone else did.
>
> [Unidentified Juror]: Not every word, but enough.
>
> [Unidentified Juror]: Difficult.
>
> [The trial court]: All right. Correct me if I'm wrong here, what I hear you saying is is [sic] that you've heard -- ideally, you would have been able to hear easier than what you did, it was difficult to hear, but you feel like you have heard enough that you feel that you can fairly and impartially render a credibility determination, am I correct in that?
>
> (Jurors respond affirmatively.)

[The trial court]: Is there any juror who disagrees with that, who feels that they haven't heard enough that they wouldn't be able to make a credibility determination?

(No response.)

[Unidentified Juror]: Get more through.

[The trial court]: That's my next point is going to be from here on out, we want to make sure that at this point in time everybody has heard -- sufficiently heard, so that you can render a verdict in this case.

(Whereupon, the jurors respond affirmatively.)

[The trial court]: All right. The record should reflect that the jury has affirmed that. Okay. Mr. Hackwelder [(Appellant's counsel)], is there any other defense evidence?

[Appellant's Counsel]: No, no, Your Honor.

[The trial court]: Okay.

[**The trial resumed and three additional witnesses testified.**]

. . . .

(whereupon, the jury was recessed at **10:55 a.m.** and the following discussion occurred in chambers:)

[Appellant's Counsel]: I thought after thinking about it I should probably put something on the record about the jury not being able to hear everything. And I'm a little concerned about the one lady blurting out, "I have heard enough." I don't know what that means. To be quite honest with you, judge, I don't know really what relief I'm requesting here. I've just got to note my concerns on the record. You know, perhaps, you know, I'm going to request a mistrial on it because they didn't hear all the testimony.

[The trial court]: Well, perhaps you're going to or are you going to?

[Appellant's Counsel]: **I am going to, I'm going to have to, judge**.

[The trial court]: I understand.

[Appellant's Counsel]: I have never been encountered with this situation before.

- 8 -

N.T. Trial, 5/20/14, at 78-80, 96 (emphasis added).

As the trial transcript indicates, Appellant did not ask for a mistrial when the trial court first addressed the auditory complaints raised by the jurors. In fact, Appellant waited until after three additional witnesses—two for the Commonwealth and one for Appellant—had testified. Thus, because Appellant did not timely object to the trial court's decision to resume trial, we reject his first argument as waived.

Appellant next argues that the trial court erred in denying his motion for a new trial based on after-discovered evidence. In support of his argument, Appellant points out that, after trial, he received two letters authored by B.M.'s physicians that rebut the Commonwealth's suggestion that B.M. physically abused children. Appellant argues that the "letters indicate that [B.M.] would have been physical[ly] unable to commit the alleged abuse and this evidence exonerated her." Appellant Brief at 13. In essence, Appellant seeks to introduce the letters to bolster B.M.'s credibility.

Rule 720, relating to post-sentence procedures and appeal, provides in pertinent part:

> (C) **After-Discovered Evidence.** A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing ***promptly*** after such discovery.[5]

_____

5 Based on our disposition of this issue, we need not express an opinion on whether Appellant filed promptly a post-sentence motion based on after-discovered evidence. We observe, however, that in his motion seeking a new trial, Appellant alleged only that he "**recently** received two letters from

*(Footnote Continued Next Page)*

Pa.R.Crim.P. 720(C) (emphasis added); ***Commonwealth v. Castro***, 93 A.3d 818, 828 (Pa. 2014) (noting that Rule 720(c) requires a motion for after-discovered evidence to be filed promptly upon the discovery of such evidence). It is well-settled that to obtain relief, the after-discovered evidence must meet a four-prong test:

> (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. At an evidentiary hearing, an appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

***Commonwealth v. Rivera***, 939 A.2d 355, 359 (Pa. Super. 2007) (citation omitted), ***appeal denied***, 958 A.2d 1047 (Pa. 2008).

Here, based upon our review of the record, we must agree with the trial court's conclusion on this issue. Specifically, the trial court correctly noted that Appellant failed to meet the first prong, *i.e.*, whether the evidence could not have been obtained before the conclusion of the trial by reasonable diligence. Indeed, Appellant presented no evidence, whether in his motion or at the hearing on his motion for new trial, to establish whether he met the first prong. As the trial court found:

> [T]he letters in question were written on November 16, 2010 and November 19, 2010 and therefore existed long before [the May 19, 2012] trial commenced. Appellant was aware of the

*(Footnote Continued)* ─────────────────

doctors indicating that [B.M.] had significant physical limitations that would have prohibited her from causing any injury to a child or person." Post-Verdict Motion, 9/25/14, at ¶ 25 (emphasis added).

- 10 -

charges against [B.M.] and brought up the accusation as part of defense contention that M.R. and J.M. had a motive to lie. Importantly, these letters were easily accessible to Appellant prior to trial and therefore do not constitute after-discovered evidence.

Trial Court Opinion, 12/19/14, at 8. Accordingly, the trial court did not err in denying Appellant's motion for a new trial based on after-discovered evidence.

Finally, our review of the sentencing order reveals that the trial court imposed upon Appellant mandatory minimum sentences under 42 Pa.C.S.A. § 9718(a)(1), relating to sentences for offenses against infant persons.[6] In light of our recent decision in **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014), **appeal granted**, ___ A.3d ___, 2015 WL 4755651 (Pa. 2015), however, we must vacate the judgment of sentence and remand this case for resentencing. **See Commonwealth v. Mosley**, 114 A.3d 1072, 1087 (Pa. Super. 2015) (noting that where application of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is

_____

[6] Section 9718 provides:

**(a) Mandatory sentence.--**

(1) A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows:

 . . . .

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)--not less than ten years.

42 Pa.C.S.A. § 9718(a)(1).

- 11 -

within the statutory limits, legality of sentence questions are not waivable and may be raised sua sponte by this Court).

In **Wolfe**, the defendant appealed from an aggregate sentence of 10 to 20 years in prison, imposed after he was found guilty of multiple counts of IDSI, unlawful contact with a minor, statutory sexual assault, and corruption of minors. We specifically addressed the constitutionality of 42 Pa.C.S.A. § 9718, the same mandatory minimum statute that the trial court applied instantly. We held that the mandatory minimum sentencing provision of 42 Pa.C.S.A. § 9718(a)(1) was facially unconstitutional even though the triggering fact was also an element of the offense for which the appellant was convicted. **Wolfe**, 106 A.3d at 805-06. Our decision in **Wolfe** was anchored in **Alleyne v. United States**, 133 S. Ct. 2151, 2161-63 (2013) (holding that any fact other than a prior conviction that triggers a mandatory minimum sentence must be found by a jury beyond a reasonable doubt), and this Court's decisions in **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) (concluding that the appellant's sentence was illegal and striking down 42 Pa.C.S.A. § 9712.1 as unconstitutional) and **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014) (vacating the judgment of sentence and remanding for resentencing without the applicable mandatory minimum sentences). Accordingly, we must conclude that the trial court imposed an illegal sentence in the case *sub judice* when it sentenced Appellant under 42 Pa.C.S.A. § 9718(a)(1).

Judgments of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judge Jenkins joins the memorandum.

Judge Lazarus files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2015