Appellant was convicted of the capital offense of robbery during the course of which the victim is intentionally killed, see Ala. Code § 13-11-2 (a)(2) (1975), and sentenced to death. His conviction was affirmed by this court in Colley v. State,405 So.2d 374 (Ala.Cr.App. 1979), later reversed, Colley v.State, 405 So.2d 391 (Ala. 1981) on the authority of Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), see Beck v. State, 396 So.2d 645 (Ala. 1980), and remanded for retrial, Colley v. State, 405 So.2d 392 (Ala.Cr.App. 1981).
His second trial, from which he now appeals, resulted in a conviction of the capital felony and a sentence of life imprisonment without parole. The details surrounding the robbery-murder are reported in our prior decision, and there are no issues presented on this appeal which necessitate a recital of the facts.
 I
The decision of the Alabama Supreme Court in Beck v. State, supra, is constitutional. Raines v. State, 429 So.2d 1111, 1112
(Ala. 1982).
 II
When the state seeks the death penalty for a robbery-murder, it is not necessary to establish any "aggravating circumstance" outlined in § 13-11-6 other than the subsection (4) circumstance that "the capital felony was committed while the defendant was engaged or was an accomplice in the commission of . . . robbery." As we observed in Dobard v. State,435 So.2d 1338 (Ala.Cr.App. 1982):
 "Appellant contends that the first aggravating circumstance essentially duplicates the offense charged in the indictment and, therefore, may not be considered an aggravating circumstance in this case, citing Keller v. State, 380 So.2d 926
(Ala.Cr.App. 1979), cert. denied, 380 So.2d 938
(Ala. 1980). The rule in Keller, to the effect that the aggravating circumstance charged in the indictment cannot be used as both the criminal charge and the circumstance aggravating that charge, has been tacitly overruled in Kyzer v. State, 399 So.2d 330 (Ala. 1981), and Beck, supra." *Page 13 
See also Luke v. State, [Ms. 4 Div. 98, March 1, 1983] ___ So.2d ___ (Ala.Cr.App. 1983).
 III
Prior to trial, appellant filed a motion in limine seeking to prevent the prosecution from using his six prior felony convictions to impeach him in the event he chose to testify. The motion was denied. Appellant contends that the trial court's ruling effectively prevented him from exercising his constitutional right to testify in his own behalf. This same argument was raised and resolved adversely to the accused inEdmonds v. State, 380 So.2d 396 (Ala.Cr.App. 1980).
Appellant further contends that the prior convictions, all of which stemmed from guilty pleas, were not available to impeach him because at the time of the pleas he was not advised of his right to appeal.
Although we recognize that there is some question whether appellant was denied due process of law if he was not, in fact, informed of his right to appeal the convictions arising from his guilty pleas, see Carey v. Leverette, 605 F.2d 745 (4th Cir.), cert. denied, 444 U.S. 983, 100 S.Ct. 488,62 L.Ed.2d 411 (1979); Upshaw v. State, 50 Ala. App. 172, 277 So.2d 917,cert. denied, 291 Ala. 800, 277 So.2d 919 (1973), it is our judgment that the failure to so inform him in this case would not have precluded the state from using the convictions, which arose from voluntary guilty pleas, for impeachment purposes.Cf. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643,28 L.Ed.2d 1 (1971) (failure to provide accused with Miranda warnings did not prevent prosecution from using otherwise voluntary confession for impeachment).
 IV
Appellant contends that the Coffee County Jury Commission exceeded its authority by disqualifying prospective jurors on the basis of age.
At a hearing on appellant's motion to quash the venire, Commission Chairman B.Z. Reynolds testified that, after reviewing and verifying the answers given on juror questionnaire forms, he excluded certain people from service. He did not "automatically" delete anyone from the roll based on their answers to the questions, but personally checked all information which could disqualify a prospective juror. Regarding the question of elderly jurors, the record reveals the following:
 A. We had no way of knowing who was getting these or anything and if they put the age down there and they — were I thought too old to come up and down the steps and things at this courthouse without assistance, then I would disqualify them.
Q. Did you have a cut-off age in mind?
 A. No. Some people are in better health at different ages than other people and the majority of them would answer that question and they would put a little note down here about remarks and they would name their doctor. And so you could call the doctor or something like that and check on it to see, and some of them even put their doctor's statement with it when they returned it. Now, that to me, would disqualify a person.
 Q. All right. Was this a decision that was reached by the entire jury board or did you all divide up and each one handle a particular section or number of beats in the county —
 A. No, sir. We have three men on the board and a secretary, and we meet twice a week and all three weren't present at some times but there was at least two there and the lady at every meeting that we held.
 Q. All right. And so, it was a joint decision, it was not just your decision alone that some could be taken off?
A. Right.
Section 12-16-60, Code of Alabama 1975, empowers the county jury commission to "determine, on the basis of information provided on the jury qualification form or interviews with the prospective juror or other *Page 14 
competent evidence . . . [i]f the prospective juror is qualified." Ala. Code § 12-16-60 (b)(1). A prospective juror is qualified if, among other things, he is "capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror." Ala. Code § 12-16-60 (a)(3).
In our judgment, the Coffee County Jury Commission did not exceed its statutory authority by disqualifying those jurors whom the members determined were physically infirm. As we observed in Kittle v. State, 362 So.2d 1260, 1264 (Ala.Cr.App. 1977), rev'd on other grounds, 362 So.2d 1269 (Ala. 1978), "[I]n considering the qualifications of jurors, jury commissioners have the right, and should, consider the practical availability for jury service of prospective jurors."
Jury commissioners must necessarily exercise their discretion when deciding whether a citizen is "afflicted with . . . physical weakness" to the extent that he is unable to serve on a jury, see Ala. Code § 12-16-60 (a)(3).
 "The preliminary determination of qualifications of persons listed for jury service, which determination controls as to whether they are to be so listed, is by jury commissioners or other officials exercising discretion and acting under statutory provisions designed to secure fortuity and eliminate personal judgment, insofar as possible, in such matter. Generally, however, it is impossible to eliminate discretion entirely and make the function of such officials purely ministerial."
47 Am.Jur.2d Jury § 99 (1969).
In State v. Reid, 340 So.2d 551 (La. 1976), and Commonwealthv. Brown, 231 Pa. Super. 431, 332 A.2d 828 (1974), both the Louisiana and Pennsylvania courts recognized that jury commissioners must be accorded the discretion to exclude those persons from jury service whose physical infirmities would interfere with the proper discharge of their duties.
In the case before us, the record does not reveal any abuse of the commissioners' discretion to disqualify physically infirm jurors. Commissioner Reynolds testified that he did not automatically delete anyone from the master jury roll because that person was over a certain age; instead, he reviewed information about the respondent's health and, if provided, checked with the citizen's personal physician. In our judgment, the actions taken by the Coffee County Jury Commission were not, therefore, arbitrary and were well within the discretionary authority provided by statute.
The judgment of conviction by the Coffee Circuit Court is due to be affirmed.
AFFIRMED.
All the Judges concur.